# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**Tim L. Tippitt**                                                                 **Plaintiff**

**v.**                                      **CASE NO. 3:13CV00215 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                        **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Tim L. Tippitt seeks judicial review of the denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI). Tippitt last worked in August 2010 as a machine operator.[1] Tippitt applied for DIB and SSI on October 27, 2010, with an alleged onset date of February 28, 2009.[2] Tippitt's date last insured is December 31, 2014.[3] Tippitt bases disability on back problems.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Tippitt did not engage in substantial gainful activity during the period from the alleged onset date to the date last insured.[5] Tippitt has severe impairments - degenerative disc disease, depression and anxiety.[6] None of Tippitt's severe impairments meet the Listings, and Tippitt can perform sedentary work except he can only occasionally bend, stoop, kneel and crawl; and is limited to simple, routine

---

[1]SSA record at p. 165.

[2]*Id.* at pp. 133 & 139.

[3]*Id.* at p. 160.

[4]*Id.* at p. 164.

[5]*Id.* at p. 13.

[6]*Id.*

tasks with supervision that is simple, direct and concrete.[7] The ALJ held that Tippitt cannot perform any past relevant work,[8] but can perform the position of security systems monitor, a position identified by the vocational expert (VE) as available in the state and national economies.[9] Tippitt's application was denied.[10]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[11] Tippitt filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

**Tippitt's allegations.** Tippitt maintains that the RFC is not supported by substantial evidence because (1) the ALJ erred in the credibility determination; and (2) the ALJ did not adequately take into account Tippitt's mental limitations. These arguments are not persuasive. The ALJ's decision is supported by substantial evidence and no legal error occurred.

---

[7]*Id.* at p. 14.

[8]*Id.* at p. 22.

[9]*Id.* at pp. 22-23.

[10]*Id.* at p. 23.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[13] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Tippitt is not disabled.[14]

**Credibility**. Tippitt maintains that the ALJ's RFC determination is not supported by substantial evidence because of errors in the credibility determination, specifically regarding Tippitt's allegations of disabling back pain.[15]

In the decision, the ALJ determined that Tippitt was not credible to the extent that his allegations conflict with the assigned RFC. An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[16] To evaluate Tippitt's credibility, the ALJ followed the required two-step process and considered the required factors,[17] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Tippitt's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

---

[13]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[14]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[15]Tippitt was first seen for back pain in March 2009, following an incident at work. SSA record at p. 236. The Arkansas Workers' Compensation Commission physician diagnosed him with a back strain and allowed him to return to work without restrictions. *Id.* at pp. 236-237. Tippitt followed up with his primary care physician. *Id.* at p. 306.

[16]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[17]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

Perhaps most importantly, the treatment notes indicate that Tippitt's back pain improved with treatment. In October 2009, following treatment with a pain medication, Tippitt indicated that the pain medication was controlling his pain effectively.[18] A subsequent note observed that Tippitt had improved with prescribed care.[19] And still another note stated that the pain medication gave Tippitt "complete improvement in his pain."[20]  It was at this point that Tippitt requested to be released to active work duty.[21] Tippitt's treating physician released Tippitt to full work duty without restrictions and released him from active medical care.[22] The record contains seven subsequent treatment notes from Tippitt's treating physician spanning over two years.[23] The notes contain very little discussion of Tippitt's back pain. Indeed, two notes do not address back pain at all.[24] In a May 2012, treatment note Tippitt indicated that he was feeling well.[25] Further, Tippitt was in no apparent distress, ambulated to the examination room without assistance, and was able to sit comfortably on the examination table without difficulty or evidence of pain.[26]

The records further indicate that Tippitt received only conservative treatment for his back

---

[18]SSA record at p. 282.

[19]*Id.* at p. 281.

[20]*Id.* at p. 280.

[21]*Id.*

[22]*Id.* at p. 281.

[23]*Id.* at pp. 295, 297, 299, 398, 416, 443 & 449.

[24]*Id.* at pp. 416 & 443.

[25]*Id.* at p. 443.

[26]*Id.*

pain. He was prescribed a muscle relaxer, a pain medication and attended physical therapy.[27] At

the time of the hearing, however, Tippitt was no longer even taking prescribed pain

medication.[28, 29] Tippitt testified that he takes Tylenol and Aleve only every other day.[30] Such

conservative treatment weighs against Tippitt's allegations of disabling back pain and supports

the denial of disability.[31]

The clinical testing contained in the record provides additional support for the ALJ's

credibility determination. While it is true that a March 2009, MRI showed disc bulges at L3-L4

and L4-L5 and a herniated disk at L5-S1, words like "mild," "slight," "small," and "some" are

used throughout the report.[32] Although the L4-L5 bulge was described as "prominent," the report

further concluded that "nerve roots do not appear extremely compressed."[33] Impingement of a

---

[27]*Id.* at pp. 236, 246, 252 & 255.

[28]*Id.* at p. 42.

[29]Although Tippitt maintains that he cannot afford additional prescription medications, he continues to have other prescriptions filled and maintains a habit of smoking one pack of cigarettes per day. SSA record at pp. 52, 224-226 & 285. Smoking is an expensive, ongoing habit that can be considered when weighing Tippitt's credibility. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forego smoking three packs of cigarettes a day to help finance pain medication."). Additionally, Tippitt maintains that the prescribed pain medications resulted in "mind altering" side effects. SSA record at p. 41. The record, however, is void of Tippitt requesting a different pain medication.

[30]SSA record at p. 62.

[31]*See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[32]SSA record at pp. 234-235.

[33]*Id.* at p. 235.

nerve root, stenosis, and foraminal narrowing can cause bothersome symptoms,[34] but the mild descriptors do not suggest a cause for disabling pain. Indeed, the conservative treatment prescribed by Tippitt's treating physicians reflects that the radiological testing found no indications of severe injury to Tippitt's spine.

The Function Report also lends support to the credibility determination. In the Report, Tippitt indicated that he is able to prepare his own meals, wash dishes, mow the lawn with a self-propelled mower, and wash laundry once a week.[35] He stated that he does not need encouragement to do these things.[36] He is further able to drive a vehicle by himself, goes outside five or six times a day, and shops in stores weekly unaccompanied.[37] Tippitt also stated that he can walk half a mile before needing to rest.[38]

Physical assessments completed by agency physicians further support the credibility determination. In a January 2011, Physical Residual Functional Capacity Assessment, a state physician determined that Tippitt is capable of work at a light exertional level, noting that Tippitt

---

[34]*See* 2 Lawyers' Med. Cyclopedia § 16.9[C] ("Whether a patient experiences discomfort from the disc disease depends on . . . canal, and foramen size, as well as the percentage of disc herniated.); Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:17 III (4th ed.) ("Protruded disks usually cause no symptoms."); 2 Lawyers' Med. Cyclopedia § 16.9 (explaining that a disc "protrusion may or may not compress the spinal cord or nerve roots, causing neurological symptoms and signs"); Mary Jeanne Krob & Laura Brassuer, 5 Attorneys Textbook of Med. (3d ed.) 15.32 (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement).

[35]SSA record at p. 203.

[36]*Id.*

[37]*Id.* at pp. 204-205.

[38]*Id.* at p. 206.

received only conservative treatment for his back.[39] That conclusion was affirmed in a Case Analysis completed by a second state physician in June 2011.[40]

A reasonable mind would accept this evidence as adequate to support the ALJ's credibility determination. The credibility determination is supported by substantial evidence.

**Mental impairments.** Tippitt asserts that the ALJ did not adequately take into consideration his mental impairments and therefore the RFC is not supported by substantial evidence.  This argument is not persuasive.

As stated above, the ALJ determined that Tippitt is capable of sedentary work except he can only occasionally bend, stoop, kneel and crawl; and is limited to simple, routine tasks with supervision that is simple, direct and concrete.[41] Tippitt first sought treatment for mental impairments in April 2009, when he was seen by his primary care physician (PCP) for anxiety attacks.[42] Tippitt was prescribed an anti-depressant.[43] Although it appears that Tippitt's anti-depressant prescription was consistently refilled, there is little mention of any mental impairment in the remaining treatment notes from his PCP.

In July 2010, Tippitt began to see a counselor and was subsequently diagnosed with a mood disorder, not otherwise specified.[44] Tippitt attended multiple counseling sessions that

---

[39]*Id.* at p. 331.

[40]*Id.* at p. 414.

[41]*Id.* at p. 14.

[42]*Id.* at p. 303.

[43]*Id.*

[44]*Id.* at pp. 384 & 348.

spanned over a year. During the majority of the therapy sessions, Tippitt's therapist noted that slight to some progress was made and Tippitt was in a fair or pleasant mood.[45] In October 2010, the therapist noted that Tippitt

> reported no anger issues since the last session and no conflict among his family in general since the last session. He stated he . . . has generally been in a more positive mood over the past several weeks. He said he's been having good results further identifying negative self talk . . . and changing it for the better. He's been more physically active also which has helped him. Overall, he sounds more hopeful concerning his coping skills and ability to cope effectively with his stressors.[46]

A subsequent note observed that Tippitt was "a little more positive over the past couple of weeks."[47] In March 2011, Tippitt reported that he had encountered "no significant mood problems over the past couple of weeks."[48] He further reported in May 2011, that his general outlook was better and "I can see I'm doing better at handling stuff and that helps me feel better too."[49] Although approximately one month later a therapy note indicated that Tippitt's depression increased, progress was made in the subsequent notes.[50] The final mental health record is a master treatment plan created in August 2011.[51] The plan indicates that Tippitt felt better than he did when he first began treatment.[52] Tippitt further stated that he experienced a

---

[45]*Id.* at pp. 384-387, 389-394, 427, 429 & 433-436.

[46]*Id.* at p. 387.

[47]*Id.* at p. 390.

[48]*Id.* at p. 394.

[49]*Id.* at p. 435.

[50]*Id.* at pp. 427-428 & 432.

[51]*Id.* at p. 423.

[52]*Id.* at p. 424.

significant change and did not want any changes to the treatment plan.[53]

The assessments conducted by state physicians indicate that Tippitt is capable of performing work according to the assessed RFC. A Mental Diagnostic Evaluation was completed in March 2011, and the state physician found that Tippitt

> is able to communicate and interact in a socially adequate manner . . . appears to have the capacity to communicate in an intelligible and effective manner . . . is likely to be able to cope with the typical mental demands of basic work-like tasks . . . appears to have the ability to attend and sustain concentration on basic tasks . . . appear[s] to have the capacity to sustain persistence in completing tasks . . . [and] appear[s] to have the capacity to complete work-like tasks within an acceptable timeframe unless the tasks aggravate his back pain.[54]

A Mental Residual Functional Capacity Assessment was also completed in March 2011.[55] The state physician determined that Tippitt is not significantly limited in seventeen of the twenty mental activity categories.[56] Of the three he is limited in, he is only moderately limited.[57] The physician further concluded that Tippitt is able to perform work where interpersonal contact is routine but superficial; the complexity of tasks is learned by experience; the tasks have several variables and require judgment within limits; and the supervision required is little for routine, but detailed for non-routine tasks.[58] This assessment was affirmed in June 2011 by a second state physician.[59]

---

[53]*Id.*

[54]*Id.* at pp. 363-364.

[55]*Id.* at p. 366.

[56]*Id.* at pp. 366-367.

[57]*Id.* at p. 367.

[58]*Id.* at p. 368.

[59]*Id.* at p. 413.

A reasonable mind would accept this evidence as adequate to support the assigned RFC with respect to Tippitt's mental impairments. The RFC is supported by substantial evidence.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Tippitt's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 19th day of November, 2014.

_____

UNITED STATES MAGISTRATE JUDGE